UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KURT JONES, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-1333 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| JUAN GONZALEZ, FAYE JENKINS, ) | |
| and THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM OPINION AND ORDER

The proverbial list of "things I learned in kindergarten" may not include "don't throw sippy cups at other people." But it would fit right in, if it's not there already. Then again, it might be unnecessary to add it to the list. Most kindergarteners know that rule already.

Unfortunately, that message was lost on Plaintiff Kurt Jones, a principal at a local elementary school run by the Chicago Public Schools. And it was lost on the staff, too. Apparently, the students weren't around because of the pandemic, and the staff had some time on their hands. Work time became play time. They decided to pass the time by playing an impromptu game of dodgeball with any objects in sight.

They were in the cafeteria, and by the look of things, Jones had ready-access to a sippy cup. So Jones decided to let it fly. He hurled the sippy cup in the direction of Faye Jenkins, a cafeteria worker. It didn't land well, literally or figuratively. The sippy cup hit her in the face, causing an injury.

For some reason, the sippy cup incident devolved from there. Jenkins called the police, and officers from the Chicago Police Department soon arrived on the scene. The boots on the ground decided that the battery-by-sippy-cup was not a crime worth pursuing, so they let it go.

But not everyone let it go. Months later, a different officer – Defendant Detective Juan Gonzalez – came to a different conclusion and arrested Jones for battery. If you think that things soon returned to normalcy, you have another think coming. The state charged Jones with three counts of battery, and the case went to trial. Jones was eventually acquitted of all charges.

If you think that things finally settled down, once and for all, you have yet another think to think. It was over, but it wasn't over.

Instead of turning the page, Jones now seeks to turn the tables. He brings a federal lawsuit against Jenkins, Detective Gonzalez, and the City of Chicago about the sippy cup affair. He claims that Defendants were part of a conspiracy to have him arrested without probable cause, in violation of his constitutional rights.

Defendants, in turn, moved to dismiss the complaint. They argue that the complaint shows that there was probable cause for the arrest. And if there was probable cause, there was no false arrest. In their view, the complaint pleads itself out of court.

For the reasons below, the Court grants the motion to dismiss.

**Background**

On March 20, 2020, only a week or so into the pandemic, the Franklin Elementary Fine Arts Center of the Chicago Public Schools had a skeletal crew. *See* Cplt., at ¶¶ 7–8 (Dckt. No. 1). The school was closed to students, but a few employees were there. *Id.* at ¶ 6. The group included Plaintiff Kurt Jones (the principal) and Defendant Faye Jenkins (a lunchroom supervisor). *Id.* at ¶ 7.

The children weren't there, but the staff decided to engage in child's play. They "started playing games in the lunchroom." *Id.* at ¶ 8. At first blush, that activity seems innocuous enough. But the "games" apparently included "throwing things at each other." *Id.* at ¶¶ 8–9.

One of the "things" turned out to be a "child's sippy cup," which the complaint also describes as a "water bottle." *Id.* at ¶¶ 10–11. It was like dodgeball, without the balls. Without the kids, the staff apparently played a game of "dodgesippy."

The complaint itself doesn't provide the backstory for the fun and games. Other filings offer some additional information about the carnival atmosphere in the cafeteria that day, while the kids weren't around. (They're not part of the complaint, so they don't count for purposes of the motion to dismiss. But still.) For what it's worth, the sippy cup apparently wasn't the only object that went flying. Other hurled items included a basketball, paper towels, a lunch bag, and an apple. *See* Resp., Ex. 2 (Dckt. No. 52-2, at 3 of 48).

It was all fun and games until Jones threw a sippy cup that hit Jenkins in the face. The complaint does not characterize how hard Jones threw the sippy cup. Maybe it was a fast pitch, or maybe it was a gentle lob. And the complaint does not reveal how far away they were from each other. No matter. The key point is that the cup collided with Jenkins's face, and she suffered a "minor injury." *See* Cplt., at ¶ 13 (Dckt. No. 1).

The "agreed-upon mischievous conduct" ended badly, and it got worse. *Id.* Jenkins was none-too-pleased with the fact that her face was on the receiving end of a pitched sippy cup. She "got upset and called the Chicago police." *Id.* at ¶ 14.

One can only imagine that call to the police, in the early days of the pandemic, when the rest of the world was shutting down. The Chicago Police Department has a lot on its plate, and it

probably doesn't get a lot of calls about airborne sippy cups. Even so, a call rang out to the police to investigate the case of dodgesippy-gone-wrong.

Officers from the Chicago Police Department soon arrived on the scene and investigated the incident. *Id.* at ¶ 15. The police interviewed all the witnesses, including Jones and Jenkins. *Id.* at ¶ 16. In the end, the officers determined that there was no criminal conduct. *Id.* at ¶ 17. They left, with a story to tell.

That conclusion apparently didn't sit well with Jenkins. She was sore from the collision, and sore about the fact that the police didn't intend to charge Jones with a crime. So she decided to up the ante, and turn up the temperature on Jones.

As the complaint tells it, Jenkins cooked up a conspiracy with another police officer, Detective Juan Gonzalez. Defendant Gonzalez was not assigned to the district, but he "somehow became a second investigating officer." *Id.* at ¶ 20. Jenkins and Detective Gonzalez then conspired to have Jones arrested, "despite there being no evidence of criminal intent or criminal acts." *Id.* at ¶ 21.

Sure enough, Jones was arrested on June 26, 2020. *Id.* at ¶ 23. He was arrested by a "fugitive swat team" at home, while he was wearing "shorts and flip-flops." *Id.* at ¶¶ 25–26.

Apparently, it wasn't obvious to the state prosecutors that the case was worth pursuing, because it took some effort to get the state to support charges. Jones was arrested after "numerous attempts to get approval for charges." *Id.* at ¶ 23.

As the complaint tells it, the arrest was a set-up to get damages for personal injuries. *Id.* at ¶¶ 18–19. The arrest was "caused by the lies and fabrications" of Jenkins. *Id.* at Count V, ¶ 33.

4

The state ultimately charged Jones with three crimes: (1) aggravated battery, causing bodily harm; (2) aggravated battery, causing great bodily harm; and (3) aggravated battery, causing permanent disfigurement. *See* 9/30/21 Order, Circuit Court of Cook County (Dckt. No. 1-1).[1]

The case proceeded to a bench trial. After hearing the evidence, the state court acquitted Jones of all charges. The state court ruled that Jones did, in fact, throw a "plastic cup/water bottle that struck Ms. Jenkins." *Id.* at 1. But the state court also found that Jenkins was "not credible" when she described her injuries. *Id.* And Detective Gonzalez was "not credible," either, when he testified about the medical records. *Id.*

Specifically, the state court found that "Ms. Faye Jenkins suffered neither great bodily harm nor permanent disfigurement. A small laceration, treated by skin glue, is nowhere near the type of injury the law requires to find great bodily harm or permanent disfigurement." *Id.* at 3.

On the other battery claim (aggravated battery, causing bodily harm), the state court found that "bodily harm to a school employee has been shown." *Id.* But the court found that Jenkins was "significantly impeached, in numerous ways, as to her version of events." *Id.* She "contradicted herself," and changed her story, and "was impeached by her own prior statements." *Id.* at 4.

The state court pointed to significant evidence that Jenkins viewed the incident as her big pay-day. She had a motive to "fabricate or embellish her testimony." *Id.* at 3. After the

---

[1] Plaintiff attached the order from the Circuit Court of Cook County to the complaint, so it is fair game on a motion to dismiss. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). This Court could take judicial notice of the findings of the state court, too. The Court is offering that order simply to summarize what the state court found, not to adopt those findings as true (putting collateral estoppel aside). The point is that the "state court found 'X,'" not that "'X' is true."

5

incident, she posted a picture of herself on Facebook, with no injury, but with the statement: "Lynette will end 2021 Swimming in cash." *Id.*

The court also summarized a wealth of evidence that Jenkins had pressured people to get their stories straight, and did so based on appeals to race. *Id.* at 4–5; *see also id.* at 5 ("Faye Jenkins told her they 'gotta stick together' and pointed to her skin color. When Hillie said she would not change her statement, Jenkins made other insults, racial comments and swear words, which are of record.") (summarizing the testimony of a cleaning lady).

Of all things, the state court heard testimony that Jenkins was the one who had the idea to play dodgeball in the first place, albeit without any balls. A witness testified: "Jenkins had hollered: 'Let's play Dodgeball.'" *Id.* at 5.

The state court had choice words for Detective Gonzalez, too. He "did not have accurate recall of this investigation," and "inaccurately testif[ied]" about the severity of the injuries. *Id.* at 5. The state court also highlighted significant shortcomings in his investigation. *Id.*

In the end, the state court found that the state had failed to prove beyond a reasonable doubt that Jones had "knowingly" caused bodily harm to Jenkins. So the state court found Jones not guilty on all three counts.

The state case was over, but this federal case was just getting started. Jones responded to his acquittal by filing suit against Jenkins, Detective Gonzalez, and the City of Chicago.

Jones brings two claims under section 1983 against Detective Gonzalez – one count for civil conspiracy (Count I), and one count for false arrest (Count II). *See* Cplt., at 1–6 (Dckt. No. 1). He also brings a state law claim for malicious prosecution against Gonzalez and Jenkins

6

(Count III), a claim for indemnification against the City of Chicago (Count IV), and a claim against Defendant Jenkins for false arrest under Illinois law (Count V). *Id.* at 7–9.[2]

In response, Defendants Gonzalez and the City of Chicago moved to dismiss the complaint in part, to the extent that it alleged a due process claim under the Fourteenth Amendment. *See* Mtn. to Dismiss (Dckt. No. 10). The Court granted the motion, concluding that "the motion to dismiss is much ado about nothing. Defendants moved to dismiss a Fourteenth Amendment claim, but Plaintiff agrees that there is no Fourteenth Amendment claim." *See* 10/20/22 Order, at 3 (Dckt. No. 44).

Defendant Jenkins moved to dismiss the complaint in its entirety, and Detective Gonzalez and the City moved to join that motion. *See* Mtn. to Dismiss (Dckt. No. 51).[3] For the reasons that follow, the Court grants the motion to dismiss.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

---

[2] As an aside, the complaint could have used a bit of cleanup. Most notably, it is somewhat unclear which counts are against which Defendants. Each of the five counts ends by stating that "plaintiff, KURT JONES, prays for judgment against the Defendants, DETECTIVE JUAN GONZALEZ." *See* Cplt., at 4, 6–9 (Dckt. No. 1). But elsewhere, some of the counts seem to indicate that they are against other Defendants in addition to, or instead of, Gonzalez. *See, e.g., id.* at 8 ("COUNT V – FALSE ARREST AS TO FAYE JENKINS, ILLINOIS LAW"); *id.* at 7 ("COUNT III – MALICIOUS PROSECUTION STATE LAW JENKINS AND GONZALEZ"). The complaint has other problems, too. It lists the relevant factual allegations in paragraphs 1 through 45, then abruptly restarts the numbering at 33 – twice.
[3] Defendant Jenkins filed the current motion to dismiss. *See* Mtn. to Dismiss (Dckt. No. 51). Soon after, Defendants Gonzalez and the City of Chicago moved to join, even though they had already unsuccessfully filed their own motion to dismiss. *See* Mtn. to Join (Dckt. No. 58). Generally, a party should raise all its arguments in one motion. *See* Fed. R. Civ. P. 12(g)(2). Piecemeal litigation is disfavored. But district courts hold the reins, and can allow another motion to dismiss. "The Seventh Circuit has held that Rule 12(g)(2) does not foreclose a motion to dismiss under Rule 12(b)(6) when there has been a previous motion to dismiss under Rule 12." *Motta & Motta LLC v. Lawyers 777, LLC*, 2020 WL 1433816, at *3 (N.D. Ill. 2020) (quotations omitted) (citing *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)). Allowing Gonzalez and the City to join the motion filed by Jenkins – even though they already filed their own motion – does not add any extra work for anybody. Accordingly, the Court grants Defendants Gonzalez and the City of Chicago's motion to join Defendant Jenkins's motion to dismiss.

7

1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## Analysis

### I. False Arrest

The Court begins with the false arrest claim against Detective Gonzalez.

A false arrest claim under section 1983 requires a plaintiff to plead that there was no probable cause for the arrest.  *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016).  "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime."  *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013).

Probable cause does not require the arresting officer to know with certainty that the arrestee committed a crime.  A probable cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands."  *See Gerstein v. Pugh*, 420 U.S. 103, 121 (1975); *see also Illinois v. Gates*, 462 U.S. 213, 246 (1983) ("[P]robable cause does not demand the certainty we associate with formal trials.").  "Determinations of probable cause are naturally based on probabilities, and a finding of

probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (citation omitted).

"Police are entitled to act on information that may be inaccurate and let the court determine whether to credit a suspect's claim of innocence." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006). And the fact that a person is later found to be not guilty of a crime doesn't necessarily mean that the arrest was unlawful. *See Stanley v. Santander Consumer USA, Inc.*, 2022 WL 4329086, at *3 (N.D. Ill. 2022) (citing *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)); *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

Here, Jones fails to allege that Detective Gonzalez lacked probable cause to arrest him. In fact, the complaint does the opposite. The complaint confirms that Gonzalez *did* have probable cause for the arrest.

Battery is a crime. Under Illinois law, "[a] person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *See* 720 ILCS 5/12-3.

In the complaint, Jones admits that he "threw a child's sippy cup." *See* Cplt., at ¶ 11 (Dckt. No. 1). He also admits that the sippy cup hit Jenkins "in the face," and that Jenkins "received a minor injury as a result." *Id.* at ¶¶ 10, 13. That's enough for a battery. *See McBride v. Grice*, 576 F.3d 703, 707–08 (7th Cir. 2009) (a witness's statement that she had been hit in the

9

head, plus evidence of her injury, was enough to establish probable cause that a battery occurred).

When it comes to the false arrest claim, those admissions are game over. Jones admitted all of the facts necessary for a battery. He admitted that he threw an object that caused a physical injury to someone else. He also admitted that Detective Gonzalez knew about the battery before the arrest, because the arrest was for the sippy cup affair.

So Jones admitted the existence of probable cause. And the existence of probable cause means that he has no false arrest claim.

The complaint defeats itself. By admitting the existence of probable cause, Jones has punched his own ticket out of the courthouse. *See Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the federal courthouse.") (citations omitted); *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) ("A plaintiff can 'plead himself out of court by pleading facts that show that he has no legal claim.'") (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (a plaintiff "can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law").

Jones pushes against the notion that there was probable cause for the arrest. But that's a heavy lift, and he doesn't get very far.

Jones views the conclusion of the first officers on the day of the incident as a roadblock when it comes to probable cause. As he sees it, the officers on the scene concluded that there

was no crime, and that conclusion negates any later conclusion about probable cause. *See* Resp. to Mtn. to Dismiss, at 10 (Dckt. No. 65).

Hardly. Investigators can change their minds about what took place, especially as the investigation unfolds and the fact-gathering continues. Even if no new facts came to light, it would not matter. A latter batch of investigators is not bound by the conclusion of an earlier batch of investigators. The state can change its mind about what happened, and whether a crime took place, and whether it is worthwhile to pursue charges. That's prosecutorial discretion.

Jones believes that he was unlawfully arrested because Detective Gonzalez didn't complete a thorough investigation. Jones spends a lot of energy poking holes in the investigation. *See* Cplt., at ¶¶ 29–38 (Dckt. No. 1). For example, Jones faults Gonzalez for failing to confirm whether Jenkins "received great bodily harm." *Id.* at ¶ 29. He faults Detective Gonzalez for failing to interview Jones, speak to the witnesses on the scene, review medical records, and so on. Jones believes that Detective Gonzalez should have investigated whether Jenkins "had a motive to fabricate the allegations," too. *Id.* at ¶ 33.

Jones demands too much. Maybe Jones is right that this case didn't involve Sherlock Holmes-level detective work. No matter. Once Detective Gonzalez had a factual basis for probable cause, no further investigation was necessary to support an arrest. *See McBride*, 576 F.3d at 707; *see also Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012); *Stanley*, 2022 WL 4329086, at *3–4 (dismissing a false arrest claim because the allegations showed that the arresting officer had probable cause); *Johnson v. Symon*, 2023 WL 3004626, at *3 (N.D. Ill. 2023) (dismissing false arrest claims where the complaint lacked allegations of a lack of probable cause); *Glanz v. Illinois*, 2016 WL 2344587, at *2–3 (N.D. Ill. 2016) (same).

11

There was no need to keep drilling, because the detective had already hit pay dirt when he found a basis for probable cause.

Officers need not "get to the bottom of exactly what happened" before making an arrest. *Bedford v. Dewitt*, 2023 WL 2561757, at *10 (N.D. Ill. 2023). "Once a police officer discovers sufficient facts to establish probable cause, she has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence." *See Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004); *see also Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003) ("[O]nce an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate.").

While an officer "may not ignore conclusively established evidence of the existence of an affirmative defense, the Fourth Amendment imposes no duty to investigate whether a defense is valid." *McBride*, 576 F.3d at 707 (quotation marks omitted). Here, the facts at hand did not "conclusively establish[]" that Jones did not commit a battery. *Id.*

Maybe Jones accidentally hit Jenkins. Or maybe not. Maybe Jenkins consented to the horseplay, and was a willing participant in the game of dodgesippy. Or maybe not. Jones points to no facts that Gonzalez knew that would have conclusively established the lack of a crime.

"All the police need is probable cause, which is well short of certainty. Like a grand jury, police may act on the basis on inculpatory evidence without trying to tote up and weigh all exculpatory evidence." *See Hernandez*, 455 F.3d at 775 (citation omitted).

When it comes to probable cause, the question is not about weighing the evidence. *See Johnson v. Eau Claire Police Dep't*, 2020 WL 10702725, at *3 (W.D. Wis. 2020) ("A warrant must be supported by probable cause, but probable cause doesn't require officers to weigh the

12

inculpatory and exculpatory evidence."); *see also Pennsylvania v. Dunlap*, 129 S. Ct. 448, 449 (2008) (Roberts, C.J., dissenting from denial of certiorari) ("In any event, an officer is not required to eliminate all innocent explanations for a suspicious set of facts to have probable cause."). That is, the question is not whether the inculpatory evidence outweighs the exculpatory evidence.

Instead, the question is one-sided. The question is whether there was enough evidence on one side of the scale to support a reasonable belief that a person had committed a crime. Weighing the evidence is the job of the jury at trial, not the job of the police at the moment of arrest. *See Beauchamp*, 320 F.3d at 745 ("[I]t is not the function of the police to establish guilt; the responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts.").

"Indeed, once probable cause does exist, a police officer is under no obligation to weigh evidence against that conclusion. If a witness says he saw you rob the bank, there is probable cause to arrest you even if your co-workers offer alibi evidence. The police are not trial judges. Once probable cause is established they can arrest and let the courts sort it all out." *See Kubis v. Heslup*, 2009 WL 799492, at *3 (N.D. Ill. 2009).

Here, Detective Gonzalez had enough evidence to form a reasonable belief that Jones had committed a battery. In fact, the complaint admits as much. Jones admits that he threw the sippy cup. He admits that it hit Jenkins in the face, and caused an injury. That's a battery. It may not have been the crime of the century, but was enough to support an arrest.

Finally, Jones points to his acquittal of all charges as evidence that there was no probable cause to arrest. But a post-trial finding of innocence says little about whether there was probable cause at the time of the arrest. *See Beck v. City of Chicago*, 2020 WL 7353405, at *5 (N.D. Ill.

13

2020) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015)); *see also Dyson v. Village of Midlothian*, 2015 WL 778850, at *5 (N.D. Ill. 2015) ("That an arrestee is eventually acquitted of the charges against him or her (or has them dismissed) is not dispositive of whether the officer had probable cause to arrest."). An acquittal does not call into question the legitimacy of the arrest.

One might be tempted to call into question whether arresting a principal and charging him with three crimes for dodgesippy-gone-wrong is the best use of societal resources. The crime beat in Chicago is a beehive of activity, with a hornet's nest of problems. The Chicago Police Department and the Cook County State's Attorney's Office aren't exactly sitting around looking for things to do. They have a few things on their plates.

The sippy cup affair may not be the best display of prosecutorial discretion in the annals of Chicago law enforcement. Still, a false arrest claim is not a way to second-guess whether the state should have brought the case in the first place.

In the end, Jones cannot dodge a simple conclusion. The complaint alleges facts showing probable cause that he had committed a battery. The existence of probable cause means that there is no false arrest claim. In effect, the complaint knocks itself out. The false arrest claim is therefore dismissed.

## II.     Civil Conspiracy under Section 1983

Next, the Court considers Count I of Jones's complaint – the count alleging a civil conspiracy under section 1983.

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).

To state a claim for conspiracy liability under section 1983, a plaintiff must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Id.*

In other words, Jones "must 'show an underlying constitutional violation' and 'demonstrate that the defendants agreed to inflict the constitutional harm.'" *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018)).

That means that "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). A plaintiff must plead an underlying constitutional deprivation to have a plausible conspiracy claim under section 1983. *See Johnson*, 2023 WL 3004626, at *5; *see also Wheeler v. Piazza*, 2018 WL 835353, at *8 (N.D. Ill. 2018) (collecting cases); *Hill v. City of Chicago*, 2009 WL 174994, at *9 (N.D. Ill. 2009) ("[I]f a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails.").

Because Jones's allegations about the unlawful arrest fail, his claim for civil conspiracy under section 1983 fails too. There are no other alleged constitutional violations that could serve as the basis for a civil conspiracy claim. Therefore, the Court dismisses the claim for civil conspiracy.

### III. Remaining State Law Claims

The dismissal of the constitutional claims clears the deck of any federal claims. It leaves Jones's state law claims for malicious prosecution, false arrest, and indemnification.

A federal court "may decline to exercise supplemental jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over the

15

remaining state law claims. There is no particular reason why the rest of the case should remain here. A state court is well situated to hear the remaining claims under state law.

Accordingly, the Court dismisses Counts III, IV, and V without prejudice.

## Conclusion

The Court grants Defendants' motion to dismiss (Dckt. No. 51). The Court dismisses the false arrest claim (Count II) and the civil conspiracy claim (Count I) with prejudice. The Court dismisses the state law claims without prejudice.

Date: July 14, 2023

Steven C. Seeger
United States District Judge